In the United States District Court
for the District of Kansas

————————

No. 20-cv-02133-TC

————————

BRAD REAMS, ET AL.,

*Plaintiffs*

v.

CITY OF FRONTENAC, KANSAS, ET AL.,

*Defendants*

————————

## MEMORANDUM AND ORDER

Plaintiffs are three former City of Frontenac, Kansas, employees who were terminated by the city council in a public vote. They brought this suit against the City and individual council members for Fourteenth Amendment violations, conspiracy to interfere with civil rights, and breach of contract. The City and council members moved for summary judgment on all counts, Docs. 59 & 60, and Plaintiffs filed a cross-motion for partial summary judgment on the issue of qualified immunity, Docs. 61 & 62. For the following reasons, Defendants' motion is granted in part and denied in part, and Plaintiffs' motion is granted in part and denied in part as moot.

## I

## A

Summary judgment is proper under the Federal Rules of Civil Procedure when the moving party demonstrates "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" when it is essential to the claim's resolution. *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998). And disputes over those material facts are "genuine" if the competing evidence would permit a reasonable jury to decide the issue in either party's favor. *Id.* Disputes—even hotly contested ones—over facts that are not essential to the claims are

irrelevant. Indeed, belaboring such disputes undermines the efficiency Rule 56 seeks to promote.

At the summary judgment stage, material facts "must be identified by reference to affidavits, deposition transcripts, or specific exhibits incorporated therein." *Adler*, 144 F.3d at 671; *see also* D. Kan. R. 56.1(d). To determine whether a genuine issue of fact exists, the Court views all evidence, and draws all reasonable inferences, in the light most favorable to the nonmoving party. *See Allen v. Muskogee*, 119 F.3d 837, 839–40 (10th Cir. 1997). That said, the nonmoving party cannot create a genuine factual dispute by making allegations that are purely conclusory, *Adler*, 144 F.3d at 671–72, 674, or unsupported by the record as a whole, *see Scott v. Harris*, 550 U.S. 372, 378–81 (2007).

The filing of cross-motions for summary judgment does not alter this standard. Each motion—and its material facts—must "be treated separately," meaning that "the denial of one does not require the grant of another." *Atl. Richfield Co. v. Farm Credit Bank Wichita*, 226 F.3d 1138, 1148 (10th Cir. 2000). For each motion, the moving party bears the initial burden of showing the absence of any genuine issue of material fact and entitlement to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Hicks v. City of Watonga*, 942 F.2d 737, 743 (10th Cir. 1991). Once the moving party meets its burden, the burden shifts to the nonmoving party to demonstrate that genuine issues remain for trial as to those dispositive matters. *Applied Genetics Int'l, Inc. v. First Affiliated Sec., Inc.*, 912 F.2d 1238, 1241 (10th Cir. 1990); *see Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986); *Bacchus Indus., Inc. v. Arvin Indus., Inc.*, 939 F.2d 887, 891 (10th Cir. 1991).

## B

Brad Reams, Terri Kutz, and Timothy Fielder each worked for the City of Frontenac. They allege that a small class of "protected" persons controlled the city. Doc. 67 at ¶ 52. This case, they assert, is the result of local dislike and mistrust of outsiders like themselves—victims of "in crowd favoritism." *Id.* at 5. Ultimately, the city council terminated Plaintiffs in a public vote at an open meeting without notice or explanation. Defendants argue that this is irrelevant "back story" and that the key facts concern Plaintiffs' employment terms. Doc. 74 at 5.

**1.** Reams served as Frontenac's City Administrator. The City originally hired him with a three-year contract, which was replaced in July 2019 by a new three-year contract approved by city council vote. Doc. 60 at ¶¶ 10–11. The contract included termination and severance

provisions. *Id.* at ¶ 12; Doc. 67 at ¶ 12. In the event that the City terminated his employment before the end of his term, the City would pay Reams a severance of six months' salary and benefits. Doc. 60 at ¶ 12; Doc. 67 at ¶ 12. (The parties dispute whether Reams could be terminated without cause. *See* Doc. 60 at 12–14; Doc. 67 at 23.) City Ordinance 2016-03 laid out his duties: to "[d]irect and supervise the administration of all departments, offices and agencies of the City, except as otherwise provided by city ordinance or by law" and to "[e]mploy and, when necessary for the good of the City, suspend or terminate any city employee." Doc. 60-8 at 1.

Kutz was the City Clerk. In March 2018, the city council approved a hiring recommendation by the City Administrator and the Mayor for Kutz to fill the role. Doc. 55 at ¶ 2.a.9. The Mayor and Kutz then signed an employment agreement that listed the City and Kutz as parties. *Id.* at ¶ 2.a.10; Doc. 60-6. Defendants dispute the agreement's validity because the agreement neither contained the City seal nor the City Administrator's signature. Doc. 60-6 at 1–2. Plaintiffs note that the previous clerks' agreements also lacked the City seal. Doc. 67 at ¶ 20. No second, separate vote was held on the signed employment agreement. *See* Doc. 60 at ¶ 19; Doc. 67 at ¶ 19; Doc. 74 at ¶ 19. Nonetheless, the agreement provided for a one-year term, renewing each January unless either party gave 90-days' notice. Doc. 60-6 at 1–2. Finally, the agreement stated that the City Clerk was an at-will position. *Id.* at 2. Plaintiffs argue that this was a contractual irregularity and that the City Clerk position was actually an "exempt position." Doc. 67 at ¶ 20; Doc. 67-14 at 26.

Fielder held the combined role of City Attorney and Prosecutor. The Mayor first appointed him in 2017, and then again in 2019. Doc. 60 at ¶¶ 24, 28; Doc. 67 at ¶¶ 24, 28. Both times, the city council voted to approve the Mayor's appointment. Fielder also claims that he had a retainer agreement with the City. Doc. 60 at ¶ 25; Doc. 67 at ¶ 25. Defendants note that the agreement submitted as evidence does not contain the City seal, nor was it signed by any city representative. Doc. 60 at ¶ 27; *see* Doc. 60-11. There is no evidence that the city council voted on a separate employment contract for Fielder or on his retainer agreement, which is undated but appears to be from 2017 based on the attached memorandum. Doc. 60 at ¶ 27; Doc. 67 at ¶ 27; Doc. 74 at ¶ 27; Doc. 60-11 at 1.

**2.** In September 2019, the city council voted to terminate Reams, Kutz, and Fielder. Doc. 60 at ¶ 31; Doc. 67 at ¶ 31. The motion passed without discussion or debate. Doc. 60 at ¶¶ 32–33; Doc. 67 at ¶¶ 32–33; Doc. 74 at ¶ 33. As the three left the meeting, they heard applause

from the unusually large crowd. Doc. 67 at 42–43. Defendant council member Clinton asked the Frontenac Chief of Police to escort the three to their offices so they could collect their belongings. Doc. 60 at 6.

Following the terminations, the City issued checks to each for wages owed. Doc. 60 at ¶¶ 40, 43–44; Doc. 67 at ¶¶ 40, 43–44. The City issued Reams and Fielder additional checks: Reams received a severance payment, and Fielder the wages he would have earned had he remained employed through December 2019. Doc. 60 at ¶¶ 41, 45; Doc. 67 at ¶¶ 41, 45. All three Plaintiffs dispute the sufficiency of the check amounts.

**3.** Plaintiffs contend there is more to the story. They allege that Frontenac is actually controlled by a small class of persons—the "in crowd"—who use coded language to identify members. Doc. 67 at ¶¶ 52–54; *see* Doc. 67-16 at ¶ 3. Plaintiffs claim that these favored persons received better treatment than themselves and "ordinary citizen[s]." Doc. 67 at ¶ 54. The group is never not expressly defined, but Plaintiffs refer generally to a "protected class," "nepotism . . . of its favored locals," "real Frontenacers," and "favored local Frontenac residence [sic]." *Id.* at ¶¶ 54, 68; *id.* at 5–6. Examples of alleged favoritism toward in-crowd persons include: turning a blind eye to violations of building codes, *id.* at ¶ 55; making an exception for extending utility services to a home beyond city limits, *id.* at ¶ 56; reducing a permit fee for fireworks vendors operating within city limits, *id.* at ¶ 58; allowing a yard sign in violation of a city ordinance, *id.* at ¶ 59; overpaying for private property designated for public acquisition, *id.* at ¶ 60; and overpaying retirement benefits, *id.* at ¶ 61.

Plaintiffs allege that this favoritism came to a head against them when Jayme Mjelde, a city employee and member of the favored crowd, failed a random drug test in violation of City policy. Doc. 60 at 23; Doc. 67 at ¶¶ 63, 73. Plaintiffs participated in the internal investigation that led to Mjelde's termination. Doc. 60 at ¶ 29; Doc. 67 at ¶¶ 63. Mjelde hired a lawyer and threatened action against the City. Doc. 67 at 1–2. Soon after, the city council terminated Plaintiffs and hired Mjelde as City Clerk, replacing Kutz. *Id.* at ¶ 76. Plaintiffs claim that the "real reason" they lost their jobs was their involvement in Mjelde's firing. *Id.* at ¶¶ 63, 67; Doc. 67-14 at ¶ 3. Defendants dispute this fact and cite other reasons for terminating Plaintiffs. Doc. 74 at ¶ 67. Each had either "lost confidence" in Plaintiffs, believed that one or more were not a "good fit for the job," or observed Plaintiffs behaving rudely or irresponsibly. *Id.*

4

## C

Plaintiffs sued the City and six individual council members, alleging six counts. In Count I, Plaintiffs allege that the City and its council members violated their constitutional rights to due process and equal protection. Doc. 55 at ¶ 4.a.1. The due process claims encompass both procedural and substantive due process. *See id.* at ¶ 4.a.1 n.1; Doc. 60 at 11; Doc. 67 at 22. In Count II, Plaintiffs allege that the individual councilmembers conspired to deprive them of their civil rights, including employment, in violation of 42 U.S.C. § 1985(3).[1] Doc. 55 at ¶ 4.a.2. In Counts III–V, Plaintiffs allege state-law, breach-of-contract claims for their employment agreements. *Id.* at ¶¶ 4.a.3–5. Finally in Count VI, Plaintiffs bring a civil conspiracy tort claim under state law, alleging that Defendants conspired to deprive Plaintiffs of their rights to continued employment in violation of the Fifth and Fourteenth Amendments. *Id.* at ¶ 4.a.6.

Defendants move for summary judgment on all counts, and the individual Defendants assert qualified immunity for the federal claims. For the contract and property-interest due process claims, Defendants argue that Plaintiffs could be terminated without cause or, in Fielder's case, suffered only nominal damages because each received a check for wages owed. For the substantive due process and equal protection claims, Defendants contend that Plaintiffs have neither identified a conscience-shocking harm nor sufficiently identified a distinct class for equal protection purposes. The other claims fail, Defendants argue, because Plaintiffs have not offered sufficient evidence to raise a genuine dispute on those claims' essential elements.

Plaintiffs not only deny these arguments, but they also filed a cross-motion for partial summary judgment on the qualified immunity issue for the equal protection and due process claims, Doc. 61 at 1. They argue that the individual defendants violated their constitutional rights under the Fourteenth Amendment and that those rights were clearly established.

## II

Defendants' motion for summary judgment is granted in part and denied in part. Their motion is granted for all Count I Section 1983

---

[1] The Pretrial Order does not expressly state that Plaintiffs bring a claim under Subsection (3). However, it is clear from the briefing that the parties understand that to be the case. Doc. 60 at 25–26; Doc. 67 at 37–38.

claims except for Fielder's procedural due process claim arising out of his property interest in continued employment. Their motion is granted for the Section 1985 claims. For the breach-of-contract claims, the motion is granted as to Reams and Fielder but denied as to Kutz. Finally, the motion is granted for the state-law civil conspiracy claim as to Reams and Kutz but denied as to Fielder.

Plaintiffs' motion for partial summary judgment is granted in part and denied in part as moot. It is granted with respect to Fielder's surviving procedural due process claim arising out of his property interest in continued employment. It is otherwise denied as moot for all other Count I claims because Plaintiffs have not raised a genuine dispute that Defendants violated their constitutional rights.

## A

Plaintiffs' Section 1983 claims arise out of alleged Fourteenth Amendment violations of due process and equal protection. The Fourteenth Amendment provides that no State shall "deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV. Due process has been understood to encompass both a procedural and substantive component. *See Browder v. City of Albuquerque*, 787 F.3d 1076, 1078 (10th Cir. 2015). Procedural due process protects against wrongful deprivations of life, liberty, or property by requiring that the state follow certain procedures before the deprivation. *Id.* Substantive due process, on the other hand, protects against certain deprivations—regardless of the procedures followed—when the state lacks sufficient justification for the deprivation. *Id.* Plaintiffs have asserted several claims based on Fourteenth Amendment violations: procedural due process (for both liberty and property interests), substantive due process, and equal protection.

## 1

Plaintiffs argue that the City and its council members violated their procedural due process rights by terminating them without explanation and without opportunity to defend themselves. They make two types of claims: due process violations of their liberty interests and due process violations of their property interests. Essentially, they claim that as public employees—with liberty interests in their good names and property interests in continued employment—they were entitled to a hearing before being deprived of those interests.

The procedural due process analysis follows a two-step inquiry. *M.A.K. Inv. Grp., LLC v. City of Glendale*, 897 F.3d 1303, 1308 (10th Cir. 2018). First, did the City's actions deprive Plaintiffs of a constitutionally protected liberty or property interest? *Id.* If so, did Defendants provide an appropriate level of process? *Id.* at 1308–09. Generally, due process requires "some kind of a hearing" before discharging an employee who "has a constitutionally protected property interest in his employment." *Cowley v. W. Valley City*, 782 F. App'x 712, 717 (10th Cir. 2019) (quoting *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 533 (1985)). Even though Plaintiffs were terminated at a public hearing by a vote of elected officials, Defendants stipulate that each Plaintiff received no process. Doc. 55 at ¶ 3.b. Thus, the inquiry focuses on the first step: whether Defendants deprived Plaintiffs of a constitutionally protected liberty or property interest.

**a.** A public employee has a liberty interest in his good name and reputation as they relate to his continued employment. *McDonald v. Wise*, 769 F.3d 1202, 1212 (10th Cir. 2014). The government infringes on that interest when (i) it makes a statement that impugns the good name, reputation, honor, or integrity of the employee; (ii) the statement is false; (iii) the statement is made during the course of termination and forecloses other employment opportunities; and (iv) the statement is published, in other words disclosed publicly. *Id.*

Defendants are entitled to summary judgment because Plaintiffs have failed to allege facts sufficient to state a claim.[2] In particular, Plaintiffs have not offered evidence of specific false statements by Defendants that impugned their good name, reputation, honor, or integrity. This absence is fatal. Plaintiffs' argument that impugning statements must have been made because a larger-than-usual audience attended the public meeting is purely speculative and does not raise a genuine dispute. *Contra* Doc. 67 at 31. Plaintiffs do not identify any of the statements—false or otherwise—that they contend drew the atypical crowd. They have therefore failed to meet their burden at this stage of

---

[2] Defendants also argue that these claims must fail because Plaintiffs did not allege liberty-interest due process violations in the Pretrial Order. Doc. 60 at 20 (citing *Washington v. Unified Gov't of Wyandotte Cnty.*, 847 F.3d 1192, 1202 (10th Cir. 2017)). Although the Pretrial Order does not expressly mention "liberty interest," it does contain allegations that Defendants did not provide Plaintiffs a chance to "clear" their names of the "taint" that Defendants caused by terminating them in a public meeting. *See* Doc. 55 at ¶ 3.a. That, coupled with their due process claims in the "Legal Claims of Plaintiffs" section, *id.* at ¶ 4.a, is enough to proceed to the merits.

the proceedings. *See Fox-Rivera v. Colorado Dep't of Pub. Health & Env't*, 610 F. App'x 745, 746 (10th Cir. 2015) ("To satisfy this pleading burden, [plaintiff] had to allege a statement impugning his good name, reputation, honor, or integrity."); *see also Self v. Crum*, 439 F.3d 1227, 1236 (10th Cir. 2006) ("Inferences supported by conjecture or speculation will not defeat a motion for summary judgment.").

And even where Plaintiffs have identified particular statements, those statements do not implicate their liberty interests. For example, Defendant LaDonna Pyle instructed the police officer on duty to deny Plaintiffs access to city computers following their terminations. Doc. 67 at 30. There is nothing impugning or stigmatizing about this remark—no longer employees, Plaintiffs had no authority or reason to access the computers. Much more is required to implicate a concern for liberty interests. *See Melton v. City of Okla. City*, 928 F.2d 920, 927 n.11 (10th Cir. 1991) (citing *Green v. St. Louis Housing Auth.*, 911 F.2d 65, 69 (8th Cir. 1990)) (recognizing sufficient stigma if the statements involve dishonesty, serious felony, manifest racism, serious mental illness, or the like because such "characteristics imply an inherent or at least a persistent personal condition, which both the general public and a potential future employer are likely to want to avoid"). Plaintiffs other allegations of statements are unsupported by the record. *See* Doc. 74 at 17–18. Thus, Defendants are entitled to summary judgment on Plaintiffs' due process claims to the extent that those claims rely on an infringement of their liberty interests.[3]

**b.** As for property interests, a public employee has a property interest in continued employment if that employee has a "legitimate expectation of continued employment." *Hesse v. Town of Jackson*, 541 F.3d 1240, 1245 (10th Cir. 2008) (quoting *Lighton v. Univ. of Utah*, 209 F.3d 1213, 1221 (10th Cir. 2000)). A legitimate expectation is distinct from a "unilateral expectation" or "an abstract need or desire" for employment, neither of which is sufficient. *Farthing v. City of Shawnee*, 39 F.3d 1131, 1135 (10th Cir. 1994) (quoting *Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 577 (1972)). Courts look to state law to determine whether a plaintiff has such an interest. *Hesse*, 541 F.3d at 1245; *see also Bishop v. Wood*, 426 U.S. 341, 344 (1977) ("A property interest in employment can, of course, be created by ordinance, or by an implied contract. In either case, however, the sufficiency of the claim of entitlement must be decided by reference to state law.").

---

[3] Because Plaintiffs have failed to allege a violation, there is no need to address Defendants' qualified immunity defense.

8

In Kansas, only vested rights create a sufficient property interest to require due process protection. *Stoldt v. City of Toronto*, 678 P.2d 153, 155 (Kan. 1984). Whether continued public employment is a vested right depends on the terms of employment. *Farthing*, 39 F.3d at 1136. Public employment is presumptively at-will, *Robert v. Bd. of Cnty. Comm'rs*, 691 F.3d 1211, 1220 (10th Cir. 2012) (applying Kansas law), and thus does not create a protected property interest unless there is evidence to the contrary from statute, ordinance, or contract, *Stoldt*, 678 P.2d at 155; *see Pilcher v. Bd. of Cnty. Comm'rs*, 787 P.2d 1204, 1208 (Kan. Ct. App. 1990). To overcome the presumption of at-will employment, a written contract must expressly fix the duration of employment or otherwise limit the employer's ability to discharge the employee. *Robert*, 691 F.3d at 1220. Importantly, the duration of employment must be *expressly* fixed. This means more than simply specifying the length of employment—it must also limit in some way the employer's ability to discharge. *See, e.g.*, *Hesse*, 541 F.3d at 1248 (finding no property interest in contract for two-year renewable terms where town retained right to terminate at any time).

*Brad Reams and Terri Kutz.* Reams and Kutz did not have protected property interests in continued employment because their contracts provided for termination without cause. For Reams, although the contract does not expressly use "without cause" language, it does not otherwise limit the City's power to terminate Reams. *See* Doc. 60-4. It is evident from the contract's termination and severance provisions that the Council could discharge Reams absent cause or fault:

> In the event Employee is terminated by the Council before expiration of the aforesaid term of employment, and such termination is not the result of criminal prosecution of the Employee, then the City agrees to pay Employee a lump sum cash payment equal to six (6) months aggregate salary, benefits, and deferred compensation. Employee shall also be compensated for all earned vacation and holiday accrued to date.

*Id.* at 2–3. Moreover, City Ordinance 2016-03, which authorizes the Council to appoint a City Administrator, states that the City Administrator "shall serve at the pleasure of the governing body." Doc. 60-8 at 1. This is classic at-will language. *See Stoldt v. City of Toronto*, 678 P.2d 153, 160 (Kan. 1984). So instead of the contract or ordinance overcoming the presumption of at-will employment, each validates it.

Plaintiffs attempt to create a genuine issue on this fact by pointing to Reams's statements that he was an exempt employee and not at-will.

*See* Doc. 67 at 23; Doc. 67-14 at 26–27. Yet Reams offers no other evidence to support this. And nothing else in the record challenges Defendants' arguments. Again, the nonmoving party cannot create a genuine factual dispute by making allegations that are purely conclusory, *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 671–72, 674 (10th Cir. 1998), or unsupported by the record as a whole, *see Scott v. Harris*, 550 U.S. 372, 378–81 (2007). Thus, Reams did not have a property interest in continued employment, and Defendants are entitled to summary judgment on this claim.

Likewise, Kutz was not entitled to due process because her employment was also at-will.[4] Plaintiffs have not pointed to any language in the contract that overrides the presumption of at-will employment. In fact, the contractual language expressly adopts it. Doc. 60-6 at 2 ("The Council may terminate the Employee at any time or any reason. The Employee remains an at will employee at all times during her employment with the City."). Plaintiffs again offer Reams's affidavit to the contrary, claiming that the contract contained an "irregularity" and that Kutz's employment was really of a different nature. Doc. 67-14 at ¶ 52. These assertions are also conclusory and insufficient to raise a genuine issue of fact in light of the express contractual language.

*Timothy Fielder.* Fielder's situation is more complicated. Fielder had a property interest that Defendants infringed, and he is entitled to pursue some of his alleged damages at trial. Defendants do not dispute that Fielder's appointment granted him a property interest in continued employment until the end of that term. Doc. 60 at 18; Doc. 74 at 14. They also grant that Fielder did not receive due process. Doc. 60 at 18. Thus, the remaining issues are whether Defendants are entitled to qualified immunity and the extent of Fielder's damages, which Defendants argue are nominal. *Id.*

On qualified immunity, although Defendants preserved a qualified immunity defense in the Pretrial Order, Doc. 55 at ¶ 4.b.1 ("All individually named Defendants are entitled to qualified immunity for all

---

[4] Defendants also argue that Kutz was not entitled to due process because she did not have a valid employment contract with the City. Doc. 60 at 14–16. There is no need to resolve that question because Defendants prevail on the alleged contract's interpretation. Therefore, although there is a genuine dispute as to whether Kutz had an employment contract with the City, *see infra* Part II.C.1, it may be assumed—for the purposes of summary judgment on this Section 1983 claim—that the City and Kutz had an employment contract.

federal claims."), they have not argued for summary judgment on that ground as to Fielder's procedural due process property-interest claim. *See* Doc. 60 at 18–19.[5] Thus, they are not entitled to qualified immunity at this stage on this issue. Ordinarily, this would leave Defendants able to pursue their qualified immunity defense at trial. But Plaintiffs independently moved for summary judgment on the issue. So whether the individual defendants may argue for qualified immunity later in this litigation must be decided now.

Suits against government actors allow those wronged by government misconduct a method of redress. *See Anderson v. Creighton*, 483 U.S. 635, 638 (1987) (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 814 (1982)). Although such suits permit the vindication of a plaintiff's federal rights, nonmeritorious suits exact a high cost from both society and government officials. *See id.* These suits may unduly interfere with the discharge of official duties due to the constant threat of civil litigation. *See Harlow*, 457 U.S. at 814. "[T]o submit all officials, the innocent as well as the guilty, to the burden of a trial and to the inevitable danger of its outcome, would dampen the ardor of all but the most resolute, or the most irresponsible, in the unflinching discharge of their duties." *Horstkoetter v. Dep't of Pub. Safety*, 159 F.3d 1265, 1277 (10th Cir. 1998) (quoting *Gregoire v. Biddle*, 177 F.2d 579, 581 (2d Cir. 1949)). Thus, the Supreme Court has recognized that qualified immunity should be liberally applied. *See White v. Pauly*, 137 S. Ct. 548, 551–52 (2017).

To balance these competing interests, government officials performing discretionary duties like the individual Defendants here, are immune from suit so long as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable official would have known. *See Pearson v. Callahan*, 555 U.S. 223, 231 (2009). Whether qualified immunity protects an official turns on the objective reasonableness of the official's actions, considering the laws clearly established at the time. *See Messerschmidt v. Millender*, 565 U.S. 535, 546 (2012). There is a presumption in favor of qualified immunity. *See*

---

[5] Defendants' opening brief contains a section for qualified immunity for the procedural due process property-interest claims titled: "Individual defendants are entitled to qualified immunity." *Id.* Yet that section does not mention Fielder, while specifically arguing qualified immunity as to Reams's and Kutz's claims. Defendants' reply brief does the same, Doc. 74 at 15–16, but more expressly. That section opens: "The individual defendants are entitled to qualified immunity with respect to Reams and Kutz . . . ," and does not mention Fielder at all. Because Defendants have not argued it at this summary judgment stage, the Court will not consider their defense as to Fielder.

*Hidahl v. Gilpin Cnty. Dep't of Soc. Servs.*, 938 F.2d 1150, 1155 (10th Cir. 1991).

Discerning whether the relevant legal rule was clearly established is a narrowly tailored and context-specific exercise. As the Court in *Anderson* recognized, nearly every right—if viewed at a sufficiently high level of generality—is clearly established. *See* 483 U.S. at 639. To protect the institutional interests that qualified immunity serves, however, more is required. *See White*, 137 S. Ct. at 552–53 (vacating Tenth Circuit decision because it construed the legal rule at too high of a level); *accord Pickens v. Aldaba*, 577 U.S. 972 (2015). Accordingly, the precise contours of the right must have been so clear that every reasonable official in that circumstance would have understood what he or she was doing violated that right, leaving no debate as to the lawfulness of the conduct. *See Reichle v. Howards*, 566 U.S. 658, 664 (2012); *Ashcroft v. al-Kidd*, 563 U.S. 731, 740 (2011); *see also Rivas-Villegas v. Cortesluna*, No. 20-1539, 2021 WL 4822662 (U.S. Oct. 18, 2021) (slip op.) (granting certiorari and summarily reversing Ninth Circuit's denial of qualified immunity where the precedent relied upon presented "materially distinguishable" facts such that it "did not give fair notice" to defendant). When it is debatable whether a violation has occurred, the law cannot, by definition, be clearly established. *See Reichle*, 566 U.S. at 669–70 (quoting *Wilson v. Layne*, 526 U.S. 603, 618 (1999)); *City of Tahlequah v. Bond*, No. 20-1668, 2021 WL 4822664 (U.S. Oct. 18, 2021) (slip op.).

For Plaintiffs' motion, this inquiry focuses on the "clearly established" prong because Defendants concede that they violated Fielder's procedural due process rights. Doc. 60 at 18; Doc. 74 at 14; *see also* Doc. 66 at 17. Plaintiffs argue that Defendants are not entitled to qualified immunity because the requirement of at least *some* process before termination was clearly established for public employees with a property interest in continued employment. Doc. 70 at 6; Doc. 67 at 27–28 (citing *Loudermill*, 470 U.S. 532). Furthermore, Defendants appear not to respond to this argument with respect to Fielder. *See* Doc. 66 at 15–17. Further still, Defendants acknowledge that Plaintiffs "have demonstrated a clearly established right to notice and opportunity to respond before termination from a position in which the individual has a property interest." Doc. 74 at 15. Defendants then proceed to argue that Reams and Kutz did not have property interests, without arguing anything with respect to Fielder. *Id.* Thus, Defendants appear to either concede that they violated clearly established law or appear not to argue the issue.

At any rate, the alleged due process infringement here did violate clearly established law. In *Loudermill*, a public employee—terminable

only for cause—was discharged without a pretermination hearing. *Id.* at 535–36. The employee argued that this violated his due process rights for his property interest in continued employment. The Court agreed. "We have described 'the root requirement' of the Due Process Clause as being 'that an individual be given an opportunity for a hearing *before* he is deprived of any significant property interest.'" *Id.* at 542 (quoting *Boddie v. Connecticut*, 401 U.S. 371, 379 (1971)). This principle requires a hearing prior to the discharge of an employee who has a constitutionally protected property interest in his employment. *Id.* (quoting *Roth*, 408 U.S. at 569–70). The Court noted that "this rule has been settled for some time now." *Id.* (citing *Davis v. Scherer*, 468 U.S. 183, 192, n.10 (1984)). Post-*Loudermill*, due process for public employees with property interests in their continued employment requires, "at minimum, an impartial tribunal, reasonable notice, and, absent exigent circumstances, a pretermination hearing." *Patrick v. Miller*, 953 F.2d 1240, 1245 (10th Cir. 1992). Defendants have stipulated that they did not provide that clearly established minimum process.

Having resolved that Defendants are not entitled to qualified immunity with respect to Fielder's property interest in continued employment, the next inquiry concerns the extent of his damages. Defendants argue that he is limited to nominal damages because he has been made whole. Doc. 60 at 18. As a threshold matter, a municipality can be liable under Section 1983 for damages caused by "improper action[s] officially adopted and promulgated" by its officers. *Vinyard v. King*, 728 F.2d 428, 433 (10th Cir. 1984). This extends to public employment due process violations. *See id.* (holding municipal hospital liable for termination of employee in violation of her procedural due process rights).

For damages, "[o]nce a plaintiff establishes a [procedural due process] violation, the burden shifts to the defendant to show by a preponderance of the evidence that it would have reached the same result absent the violation." *McClure v. Indep. Sch. Dist. No. 16*, 228 F.3d 1205, 1213 (10th Cir. 2000). Unless the defendant carries that burden, the plaintiff is entitled to recover damages for the injury caused by the defendant's adverse action. *Id.*; *see Carey v. Piphus*, 435 U.S. 247, 259 (1978) ("Procedural due process rules are meant to protect persons not from the deprivation, but from the mistaken or unjustified deprivation of life, liberty, or property.").

Fielder has established a violation, and so Defendants bear the burden of showing that they would have terminated Fielder anyway, absent the due process violation. But Defendants do not argue that Fielder would have been fired regardless of the amount of process he should have received (*e.g.*, a pretermination hearing). Instead, they

argue that Fielder has no damages because they paid him through the end of 2019, consistent with his one-year term. Doc. 60 at 18; Doc. 74 at 14–15. Those payments came in two checks: one for $911.26 (past wages, paid September 30, 2019) and $13,062.59 (post-termination wages, paid February 15, 2021). Doc. 60 at ¶¶ 44–45. Fielder does not challenge the amount of the checks, Doc. 67 at ¶¶ 44–45, only their sufficiency.

Regarding these payments, Defendants are correct that Fielder has been made whole as to any wages owed. Thus, Fielder is not entitled to damages stemming from lost wages from his city position. *Contra* Doc. 67-16 at ¶ 13 (claiming entitlement to wages through June 2020). Fielder has not offered evidence sufficient to controvert Defendants' contention that Fielder had a one-year term that ended in December 2019. Fielder's term began in January 2019. Doc. 60-12 at 2; Doc. 60-7; Doc. 67-16 at ¶ 2. Yet according to Fielder, he had a contract with the City in the form of a retainer agreement and it ran through June 2020. Doc. 67-16 at ¶ 13; *see* Doc. 60-11. He asserts that he is owed for that six-month difference: $35,000. But Defendants challenge the significance of the retainer agreement. It was only signed by Fielder and not by any city representative. Doc. 60 at ¶ 26; Doc. 67 at ¶ 26. It has no term length, and the attached memorandum to the retainer is dated June 15, 2017. Doc. 60-11 at 1. Fielder claims that the lack of other signatures "does not mean that the defendant City does not have a fully executed copy or that a fully executed copy did not exist at the time." Doc. 67 at ¶ 26. Maybe so. But he has not alleged that the "fully executed copy" fills in those gaps regarding term length and dates. Without other evidence, Fielder's assertion that his term ran beyond the time prescribed by ordinance, *see id.* at 23–24, and his proffered retainer do not raise a genuine dispute about the duration of his employment. For this motion, the facts support only that Fielder had a property interest in continued employment through the end of his one-year term—December 2019.

Nonetheless, there remain genuine issues of material fact surrounding Fielder's other alleged damages. Beyond wages, he seeks to recover $50,000 for business interference for the time needed to reestablish his legal practice, the loss in value from the sale of his silver dollar collection and sale of "original pieces of art" that he had to sell at significant loss to meet personal obligations, and $1,000,000 for his emotional distress. Doc. 55 at ¶ 5.2–4; *see also* Doc. 67-16 at ¶ 14. For these other damages, Defendants have failed to show that there is no

genuine dispute as to their facts.[6] These alleged damages might be accurate or they might overstate things, but this is Defendants' summary judgment motion, and they have argued for nominal damages only on the theory that they made Fielder whole.

**2**

Turning to the substantive due process claims, Defendants are entitled to summary judgment. Plaintiffs argue that Defendants violated their substantive due process rights because Defendants engaged in "conscience shocking behavior." Doc. 67 at 24–25.

In some circumstances, a public employee's termination can be "so arbitrary or capricious as to violate the concept of 'substantive' due process embodied in the Fourteenth Amendment." *Earles v. Cleveland*, 825 F. App'x 544, 552 (10th Cir. 2020) (quoting *Brenna v. S. Colo. State Coll.*, 589 F.2d 475, 476 (10th Cir. 1978)). The termination must shock the conscience and the plaintiff must show that the "government actor abused his or her authority or employed it as an instrument of oppression." *Koessel v. Sublette Cnty. Sheriff's Dep't*, 717 F.3d 736, 750 (10th Cir. 2013) (brackets and internal quotation marks omitted) (quoting *Williams v. Berney*, 519 F.3d 1216, 1220 (10th Cir. 2008)). Substantive due process prohibits "only the most egregious official conduct." *Id.* (quoting *Seegmiller v. LaVerkin City*, 528 F.3d 762, 767 (10th Cir. 2008)). Even most intentionally inflicted injuries caused by misuse of government authority will not meet this standard. *Id.*; *see Ward v. Anderson*, 494 F.3d 929, 937–38 (10th Cir. 2007) ("[A] plaintiff must do more than show that the government actor intentionally or recklessly caused injury to the plaintiff by abusing or misusing government power. The plaintiff must demonstrate a degree of outrageousness and a magnitude of potential or actual harm that is truly conscience shocking. This is a high level of outrageousness." (citation omitted)).

Plaintiffs have not alleged any conscience-shocking harm. They were terminated by public vote at a public meeting. *See* Doc. 74 at 11 (citing K.S.A. 75-4319(c) (no binding actions taken during closed recesses)); *see also* K.S.A 75-4317 (open meetings requirement). Two of them did not have property interests in continued employment and were at-will employees. The third had a property interest, but nothing

---

[6] Note that emotional or mental damages must be tied to the deprivation of process itself and not the termination. *McClure*, 228 F.3d at 1214.

about his termination rose to a conscience-shocking harm from "egregious official conduct." Finally, Plaintiffs have not argued that the City acted in an arbitrary or capricious manner lacking rational basis. Even if they had, each individual Defendant noted that he or she had lost confidence in Plaintiffs' abilities, observed rude behavior and ineffectiveness, or received negative feedback from citizens about Plaintiffs. Doc. 74 at ¶ 67. Thus, Defendants are entitled to summary judgment as to Plaintiffs' Section 1983 claims arising out of substantive due process violations.

3

In addition to their due process claims, Plaintiffs assert violations of equal protection based on their "outsider" status.[7] *See* Doc. 67 at 33. Defendants' motion is granted for these claims.

**a.** The Equal Protection Clause of the Fourteenth Amendment provides that no State shall "deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. The government must treat similarly situated people alike. Intentional or arbitrary discrimination, whether occasioned by express terms of a statute or by its improper execution through duly constituted agents, is

---

[7] Although the Pretrial Order mentions "equal protection" in Count I of Plaintiffs' legal claims, it does not describe Plaintiffs' legal theory. *See* Doc. 55 at 6–8, 9–10. Plaintiffs' insider/outsider theory—the whole crux of the claim—does not come until their response to Defendants' motion for summary judgment, Doc. 67. Until then, Plaintiffs had not identified the basis for their equal protection claims. *See* Doc. 55 ("The Pretrial Order supersedes all pleadings and controls the subsequent course of this case."). Claims or theories not included in the pretrial order usually are waived. *Leathers v. Leathers*, 856 F.3d 729, 760 (10th Cir. 2017). A plaintiff cannot escape the binding effect of a pretrial order by raising new issues in a response to the defendant's motion for summary judgment. *Hullman v. Bd. of Trs.*, 950 F.2d 665, 667 (10th Cir. 1991). Yet it is also true that a pretrial order should be "liberally construed to cover any of the legal or factual theories that might be embraced by its language." *Leathers*, 856 F.3d at 760 (quoting *Koch v. Koch Indus., Inc.*, 203 F.3d 1202, 1220 (10th Cir. 2000)). This has its limits because "the primary purpose of pretrial orders is to avoid surprise." *Id.* at 761. This Pretrial Order lacks factual allegations about Plaintiffs' equal protection claim. There is no mention of belonging to a distinct class, the characteristics of that class that distinguish it, or comparison to similarly situated persons not in the class. Merely stating "equal protection" as a legal claim without any facts tending to support that a claim does not avoid surprise. For that reason alone the claim could, and arguably should, be dismissed.

prohibited. *A.N. ex rel. Ponder v. Syling*, 928 F.3d 1191, 1196 (10th Cir. 2019) (quoting *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000)).

For public employment, issues arise when "the government makes class-based decisions in the employment context, treating distinct groups of individuals categorically differently." *Engquist v. Ore. Dep't of Agr.*, 553 U.S. 591, 605 (2008). Plaintiffs must therefore assert membership in a distinct class group. *See id.* at 594, 601 (holding that the class-of-one theory of equal protection does not apply to public employment); *Corey Airport Servs., Inc. v. Clear Channel Outdoor, Inc.*, 682 F.3d 1293, 1296–97 (11th Cir. 2012); *see also Engquist*, 553 U.S. at 604 ("It is no proper challenge to what in its nature is a subjective and individualized decision that it was subjective and individualized. That the Court has never found the Equal Protection Clause implicated in this area is not surprising, given the historical understanding of the at-will nature of government employment."). Further, "[i]n order to assert a viable equal protection claim, plaintiffs must first make a threshold showing that they were treated differently from others who were similarly situated to them." *Barney v. Pulsipher*, 143 F.3d 1299, 1312 (10th Cir. 1998).

**b.** Defendants are entitled to summary judgment because Plaintiffs have failed to offer sufficient evidence that they belong to a distinct, cognizable group for equal protection purposes, especially in light of the "subjective and individualized" nature of public employment. Plaintiffs claim to be members of a class of "outsiders" that were treated differently than "insiders" or "favored persons." *See* Doc. 67 at 12, 17, 33. But Plaintiffs offer little evidence to define who counts as outsiders and who as insiders. They refer to the "culture of hometown favoritism, preference, and protection to local life-long residence [sic] over outsiders" that the "founding families" created over generations. *Id.* at 1. Plaintiffs do not sufficiently define how residency status and duration actually or effectively create separate groups, even claiming that hometown bias sometimes works against people who live in Frontenac. *Id.* at 3. As Defendants have noted, it is unclear at what point one becomes a Frontenac "insider." Doc. 74 at 19. For instance, Plaintiffs do not appear to assert that being born in Frontenac is sufficient to be favored (or even necessary). *See, e.g.*, Doc. 62 at ¶ 31 (referring to hostility by Defendant council member Clinton toward Mayor Grilz); Doc. 67 at 4 (describing Mayor Grilz as a lifelong Frontenac resident who sought to improve the City's administration).

All told, Plaintiffs' theory boils down to politics and cliques. That is, some Frontenacers are well connected to prominent persons in the community and others are not. An equal protection claim cannot rest simply on being the persons "who suffered at the hands of the

supposed discriminator." *Corey Airport Servs., Inc.*, 682 F.3d at 1298; *see also Pignanelli v. Pueblo Sch. Dist. No. 60*, 540 F.3d 1213, 1221 (10th Cir. 2008) ("To treat employees differently is not to classify them in a way that raises equal protection concerns. Rather, it is simply to exercise the broad discretion that typically characterizes the employer-employee relationship."). Allowing otherwise would result in "indeterminate and overlapping groups . . . inadequate to qualify as identifiable for purposes of an Equal Protection Clause claim." *Corey Airport Servs., Inc.*, 682 F.3d at 1298.

**c.** Even if Plaintiffs have identified a cognizable class, they have failed to offer sufficient evidence that they were treated differently than similarly situated employees. "Individuals are 'similarly situated' only if they are alike 'in all relevant respects.'" *Requena v. Roberts*, 893 F.3d 1195, 1210 (10th Cir. 2018) (quoting *Coal. for Equal Rights, Inc. v. Ritter*, 517 F.3d 1195, 1199 (10th Cir. 2008)). The "relevant respects" in this case encompass public employment and manner of termination. Plaintiffs offer two "obvious examples" of similarly situated persons who were terminated but not publicly like Plaintiffs: Doug Sellars and Jayme Mjelde. Doc. 67 at 24–25, 32. Key distinctions show why they are not sufficiently similarly situated for equal protection purposes. Mjelde did not report to the city council; she reported to the administration and could be fired without public vote or council action. *See* Doc. 74 at 20; Doc. 67-14 at ¶ 20–21; Doc. 67-15 at ¶ 12. Sellars faced criminal charges and was permitted to resign. Whether he would have been terminated privately or publicly is purely speculation. Finally, even if he was similarly situated to Plaintiffs, he does not form a sufficient sample size to demonstrate discrimination between classes of individuals. *See Jennings v. City of Stillwater*, 383 F.3d 1199, 1213 (10th Cir. 2004) ("Looking only at one individual, however, there is no way to know whether the difference in treatment was occasioned by legitimate or illegitimate considerations. . . .").

### B

In addition to their constitutional claims, Plaintiffs allege that Defendants conspired to deprive them of their civil rights in violation of 42 U.S.C. § 1985. Defendants are entitled to summary judgment because Plaintiffs have failed to allege essential elements of a Section 1985 claim.

Section 1985 grants a cause of action to anyone subjected to a conspiracy to deprive that person of "the equal protection of the laws, or of equal privileges and immunities under the laws. . . ." 42 U.S.C. § 1985(3); *see also United Bhd. of Carpenters & Joiners of Am., Loc. 610,*

*AFL-CIO v. Scott*, 463 U.S. 825, 830–34 (1983). To establish a claim, plaintiffs must allege (i) a conspiracy, (ii) to deprive plaintiff of equal protection or equal privileges and immunities, (iii) an act in furtherance of the conspiracy, and (iv) a resulting injury or deprivation. *Tilton v. Richardson*, 6 F.3d 683, 686 (10th Cir. 1993). The second element—a discriminatory motive—requires "some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action." *United Bhd. of Carpenters*, 463 U.S. at 834 (quoting *Griffin v. Breckenridge*, 403 U.S. 88, 102 (1971)); *Tilton*, 6 F.3d at 686. Section 1985 does not cover conspiracies motivated by economic, political, or commercial animus. *Wilhelm v. Cont'l Title Co.*, 720 F.2d 1173, 1175 (10th Cir. 1983).

Plaintiffs' claims fail because, as Defendants explained, the alleged conspiracy does not fall within those categories that trigger Section 1985(d). Plaintiffs have not alleged any race-based motive, and their class-based theory of "hometown favoritism," Doc. 67 at 1, is not sufficient to state a claim under Section 1985. *See Wilhelm*, 720 F.2d at 1175. Like with Plaintiffs' equal protection theory, the class here is ill-defined and essentially grounded in political animus. Defendants are therefore entitled to summary judgment.

## C

Finally, Plaintiffs allege claims for breach of contract and civil conspiracy under Kansas law. The City is entitled to summary judgment on the breach-of-contract claims with respect to Reams and Fielder, but not Kutz. For the state-law civil conspiracy claims, Defendants are entitled to summary judgment with respect to Reams and Kutz, but not Fielder.

## 1

Kansas law defines the breach of contract elements. To state a claim plaintiff must establish (i) the existence of a contract between the parties, (ii) sufficient consideration to support the contract, (iii) the plaintiff's performance or willingness to perform in compliance with the contract, (iv) the defendant's breach of the contract; and (v) damages to the plaintiff caused by the breach. *Stechschulte v. Jennings*, 298 P.3d 1083, 1098 (Kan. 2013). The City argues that Plaintiffs cannot establish that it breached any contracts. Plaintiffs argue they were terminated and underpaid in breach of their agreements.

*Brad Reams.* The City did not breach Reams's employment contract. The City argues that it completed its contractual obligation to Reams

when it paid out his severance package. Doc. 60 at 27. Reams was an at-will employee. *See supra* Part II.A.1.b. Thus, the sole act of terminating Reams does not constitute a breach. Instead, Reams argues that he was not paid the correct severance. Following his termination, the City sent Reams two checks: one for $1,062.29 representing wages owed to that point and one for $61,573.55 representing his severance, which included six months' salary and his accrued vacation and benefit premiums. Doc. 60 at 27. According to Reams, this was not enough. Doc. 67 at ¶¶ 40–42. He claims that he was owed $360,000, apparently based on his belief that the City owed him the full amount of his three-year contract salary and benefits instead of the six months' severance that the contract expressly provides. Doc. 67-14 at ¶ 53. Importantly, Reams does not contest that the six-month amount was incorrect—only that six months was an inappropriate period on which to calculate his severance. Simply asserting that the calculation is incorrect without specifically identifying how it is incorrect fails to create a genuine dispute about his severance. Thus, the City is entitled to summary judgment on Reams's breach-of-contract claim.

*Terri Kutz.* The City is not entitled to summary judgment on Kutz's contract claim. The City argues that Kutz cannot state a claim because she had no contract with the City. Doc. 60 at 27. But Kutz has raised a genuine dispute about whether she had a contract. Kutz provided a copy of her alleged contract, which the Mayor had signed. Doc. 60-6. The Council voted to approve her appointment as City Clerk and authorized biweekly payments for her work. Doc. 67-15 at ¶¶ 22–27. It approved a raise under the contract. *Id.* at ¶ 26. Still, the City argues that even if Kutz signed an agreement, the City entered it *ultra vires* because only the Mayor, who did not have authority to contract on the City's behalf, signed it. Doc. 60 at 16, 27. Plaintiffs counter that the Mayor had home-rule authority to contract under the Kansas Constitution. Doc. 67 at 22. Plaintiffs also note that previous City Clerks had employment contracts. *Id.*; Doc. 67-6 at 5. These facts, viewed in the light most favorable to Kutz, show that the City has not satisfied its burden to show that no genuine fact issues remain.

The City also argues that even if there was a contract, Kutz cannot show a breach because she was terminable without cause. Doc. 60 at 16–18, 27. But Kutz does not allege a breach solely on the fact that the City terminated her. She claims that the City has not paid her what she was owed under the terms of the contract and its severance provision. Doc. 67 at ¶ 70; Doc. 67-15 at ¶¶ 29–30. The City did not respond to this argument, *see* Doc. 74 at 23, and there remains a genuine factual dispute. Thus, the City is not entitled to summary judgment as to Kutz's contract claim.

*Thomas Fielder*. The City is entitled to summary judgment with respect to Fielder's contract claim. The Defendants argue that Fielder had no contract with the City. Doc. 60 at 28–29. He had a one-year appointment and has been paid through the end of that term. *See supra* Part II.A.1.b. Whether his appointment is classified as a contract or not, Defendants argue that he has suffered no damages as a result of his termination.

The proper measure of damages for the breach of an employment contract is the amount of wages the employee would have earned, less the amount actually earned or with reasonable diligence could have earned. *Masterson v. Boliden-Allis, Inc.*, 865 P.2d 1031, 1035 (Kan. 1993). The City issued Fielder a check for the wages that he would have earned through the end of his employment term, December 2019. As discussed, he has failed to raise a genuine dispute that his appointment or employment extended beyond then. Thus, Fielder received what he was owed under a contract theory and therefore cannot sustain a claim for breach. *See Stechschulte*, 298 P.3d at 1098.

## 2

Plaintiffs allege that Defendants conspired to deprive Plaintiffs of their rights to continued employment. Kansas law recognizes civil conspiracy as an actionable tort. *Stoldt*, 678 P.2d at 161. The elements of that claim are: (i) two or more persons, (ii) an object to be accomplished, (iii) a meeting of the minds in the object or course of action, (iv) one or more unlawful overt acts, and (v) damages as the proximate result thereof. *Id.* Conspiracy is not actionable without commission of some wrong giving rise to a cause of action independent of the conspiracy. *Id.*

Defendants argue that they are entitled to summary judgment for the sole reason that Plaintiffs have failed to allege an underlying tort that is independent of the conspiracy—a necessary element of the cause of action. Doc. 60 at 29–30 (citing *Stoldt*, 678 P.2d at 161). With respect to Reams and Kutz, Defendants are correct. Reams suffered no Fourteenth Amendment violations and no breach of contract because he was terminable without cause. Kutz has raised a genuine dispute that the individual Defendants caused the City to breach her employment contract, but breach of contract alone is not a sufficient underlying "wrong" for conspiracy. *May v. Santa Fe Trail Transp. Co.*, 370 P.2d 390, 395 (Kan. 1962). Any breached contract was with the City, not the individual defendants. And the individual defendants cannot be liable for conspiring with one another when acting in their official capacity on behalf of the City that they represent—*i.e.*, the City cannot

conspire with itself. *Cf. Diederich v. Yarnevich*, 196 P.3d 411, 419–20 (Kan. Ct. App. 2008) (citing *May*, 370 P.2d at 394–95) (corporation context).

For Fielder, however, Defendants are not entitled to summary judgment because Plaintiffs have alleged an underlying wrong. Defendants terminated Fielder unlawfully—that is, without due process. This is more than a mere breach of an employment contract. *See Diederich*, 196 P.3d at 420. The individual Defendants violated Fielder's constitutional rights and were not "privileged" in doing so in the way that they were with respect to Kutz's at-will contract. *See May*, 370 P.2d at 423–25. Because Defendants have not challenged Plaintiffs' civil conspiracy claim on other grounds, it may proceed with respect to Fielder.

### III

For the reasons set forth above, Defendants' motion for summary judgment, Doc. 59, is granted in part and denied in part. Plaintiffs' motion for partial summary judgment, Doc. 61, is granted in part and denied in part as moot.

It is so ordered.

Date: February 24, 2022                    s/Toby Crouse
                                           Toby Crouse
                                           United States District Judge